UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

JACOB ANTHONY,

                Plaintiff,

v.

COUNTY OF MULTNOMAH, et al.,

                Defendants.

No. CV 04-229-MO

OPINION AND ORDER

**MOSMAN, J.,**

This is a § 1983 pro se prisoner case. Plaintiff Jacob Anthony alleges defendants, Multnomah County and various officials at Multnomah County Detention Center ("MCDC"), violated his constitutional rights while he was housed at the MCDC. Because Mr. Anthony conceded several of his claims at the hearing held on January 31, 2006, and because I find there are no genuine issues of material fact in relation to his remaining claims, defendants' motion for summary judgment (# 48) is GRANTED.

**Background**

Before the court is defendants' motion for summary judgment. As such, the facts are viewed in the light most favorable to Mr. Anthony, the non-movant. *Motley v. Parks*, 383 F.3d 1058, 1061 n.3 (9th Cir. 2004).

Mr. Anthony's complaint is based on three events occurring in 2003 while he was housed at the MCDC.[1] However, because Mr. Anthony conceded his Eighth Amendment deliberate indifference to medical needs and excessive force claims, only two of the events continue to be

---

[1]Mr. Anthony has since been transferred to the Oregon State Penitentiary.

PAGE 1 - OPINION AND ORDER

relevant. Those events are as follows.

    1) <u>September 17, 2003</u>

On September 17, Mr. Anthony had a hearing in state court. Defendants Kovachevich and Streich, Multnomah County deputies, were assigned to the courtroom during the hearing. Mr. Anthony was in shackles while in the courtroom, and his hands were chained at his waist. The outcome of the hearing was not favorable to Mr. Anthony, and as he admitted to the court on January 31, 2006, he continued to express his disagreement to the presiding judge even after the hearing concluded. Deputy Kovachevich pulled on Mr. Anthony's arms in an attempt to escort him from the courtroom. Mr. Anthony told the deputy to stop so that he could gather his legal papers, and then he "pulled away" from the deputy and "jerked [his] arm away as much as [he] could." Lane Aff., Ex. 1 at 11. Thereafter, both Deputy Kovachevich and Deputy Streich grabbed Mr. Anthony's wrists and shoulders and moved him across the courtroom, shoving him up against a pillar. The deputies placed him in a control hold, and he was lifted off the ground and removed from the courtroom.

Deputy Kovachevich filed a report later in the day stating Mr. Anthony was upset at the outcome of the hearing and was making comments to the judge when the deputies began removing him from the courtroom. The deputy also reported that Mr. Anthony lunged at him in what he perceived as an attempt to head-butt him, and that Mr. Anthony actively resisted the deputies. Sergeant Wheeler was assigned to investigate the incident, and he interviewed Mr. Anthony the following day. He also reviewed Deputy Kovachevich's incident report. Sergeant Wheeler essentially agreed with the deputy's version of events, stating "I find [Mr. Anthony's] attitude and behavior terrible." Feller Aff., Ex. 3 at 2.

Officer Murray held a misconduct hearing on September 21. Mr. Anthony requested

PAGE 2 - OPINION AND ORDER

three witnesses on his behalf: the judge, the D.A., and his attorney, all of whom were in the courtroom during the incident. In his complaint he alleges Officer Murray failed to contact any of them. However, Mr. Anthony admits in his deposition that Officer Murray spoke with the judge and the D.A., and that she tried to contact his attorney, but the attorney was unavailable and failed to return her calls. Lane Aff., Ex. 1 at 21-22; *see also* Feller Aff., Ex. 4 (disciplinary hearing report detailing testimony provided by the witnesses and fact that Mr. Anthony's attorney was contacted but did not return Officer Murray's call). Officer Murray found Mr. Anthony guilty of (1) failing to follow orders, (2) disruptive behavior, and (3) attempted assault based on Mr. Anthony's statements, the officers' statements, and the witnesses' statements. Mr. Anthony appealed Officer Murray's decision to Captain Turney, but the appeal was denied. Again, based on Mr. Anthony's and the officers' testimony, Captain Turney concluded: "it is very apparent that you were not cooperative while in the courtroom . . . . it is readily apparent that you do not follow directions." *Id.* Ex. 5.

2) <u>October 22,[2] 2003</u>

On this date, Mr. Anthony was housed in module 5C,[3] and around 11:00 p.m., he was in his solitary cell playing chess with another inmate. Both inmates had a piece of paper in their cell, and they were yelling out moves to each other. Deputy McGraw walked over to Mr. Anthony's door and looked in. Mr. Anthony saw the deputy looking, and he moved towards the cell door and yelled out another move. The deputy kicked the cell door as Mr. Anthony's

---

[2]As pointed out in defendants' memorandum, Mr. Anthony claims this event occurred on November 22, but the incident report is dated October 22.

[3] Officer Murray states in her affidavit this is a segregated housing unit where the inmates are "limited to a solitary cell." Murray Aff. at 3. Mr. Anthony states he was "in the hole." Lane Aff., Ex. 1 at 45.

face was pressed up against it, and ordered him to stop talking. In response, Mr. Anthony hit the cell door and made some aggressive and profane comments. Deputy McGraw called for back-up, and Sergeant Hicks ordered Mr. Anthony to "[t]urn around, cuff up." Lane Aff., Ex. 1 at 45. Mr. Anthony argued with the sergeant, claiming he was not bothering anyone and that Deputy McGraw just stood by his cell, kicked the door in his face, and yelled at him. Deputy McGraw stated his foot hit the cell door by accident. Sergeant Hicks stated he did not believe Mr. Anthony's version of events, and Mr. Anthony was cuffed and removed from his cell.

Mr. Anthony got a misconduct report for this incident, and in preparation for his hearing he asked Officer Murray to interview all the inmates in the module that night. Officer Murray refused, instead finding Mr. Anthony guilty of (1) failing to follow an order, (2) disrespecting staff, and (3) engaging in disruptive behavior based on Mr. Anthony's admissions and the officers' statements, as well as Mr. Anthony's disciplinary history. Again, Mr. Anthony appealed to Captain Turney, and his appeal was denied. Captain Turney concluded that even if Deputy McGraw was lying about unintentionally hitting the cell door with his foot, Mr. Anthony was guilty of the disciplinary charges against him because his initial action–yelling out chess moves–was in violation of the rules,[4] and because he continued to disrupt the entire unit while the officers were trying to deal with him.

## Discussion

---

[4] In support of their motion, defendants submit a portion of the Inmate Handbook providing that "[c]ommunicating with other inmates during lock-down times" is a violation of the Minor Rules of Conduct.

Mr. Anthony alleges his procedural due process rights under the Fourteenth Amendment were violated because Officer Wheeler failed to conduct an adequate investigation of the September 17 incident, and because he was not allowed to call witnesses on his behalf during the disciplinary hearings, and Officer Murray's and Captain Turney's decisions finding him guilty of disciplinary violations were based on falsified evidence. Inmates are not entitled to the full panoply of due process rights in relation to disciplinary proceedings. *Walker v. Sumner*, 14 F.3d 1415, 1419 (9th Cir. 1994), *abrogated on other grounds by Sandin v. Conner*, 515 U.S. 472 (1995) (citing *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974)). Rather, they are only entitled to those rights recognized enumerated by the Supreme Court in *Wolff*. *Walker*, 14 F.3d at 1419; *Serrano v. Francis*, 345 F.3d 1071, 1077-78 (9th Cir. 2003). The Ninth Circuit has defined these rights as follows:

> First, "written notice of the charges must be given to the disciplinary-action defendant in order to inform him of the charges and to enable him to marshal the facts and prepare a defense." *Wolff*, 418 U.S. at 564. Second, "at least a brief period of time after the notice, no less than 24 hours, should be allowed to the inmate to prepare for the appearance before the Adjustment Committee." *Id.* Third, ". . . 'written statement by the factfinders as to the evidence relied on and reasons' for the disciplinary action." *Id.* (quoting *Morrissey v. Brewer*, 408 U.S. 471, 489 (1972)). Fourth, "the inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." *Id.*, 418 U.S. at 566. Fifth, "[w]here an illiterate inmate is involved . . . or where the complexity of the issue makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case, he should be free to seek the aid of a fellow inmate, or . . . to have adequate substitute aid . . . from the staff or from a[n] . . . inmate designated by the staff." *Id.* at 570.

*Walker*, 14 F.3d at 1420. However, these minimal due process rights do not apply to every potential loss of liberty an inmate might face. Rather, *Wolff* only applies where the disciplinary

action at issue "implicates a protected liberty interest in some 'unexpected matter' [sic][5] or imposes an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Serrano*, 345 F.3d at 1078 (quoting *Sandin*, 515 U.S. at 484).

Here, it is unclear whether the disciplinary actions taken against Mr. Anthony implicated a protected liberty interest. As a result of the September and October hearings, Mr. Anthony received time in lock-down and he was assessed a fine. Generally, administrative segregation in and of itself is insufficient to trigger *Wolff* due process. *Sandin*, 515 U.S. at 486; *Serrano*, 345 F.3d at 1078. This is so because usually the conditions of segregation are not that much different than the "ordinary incidents of prison life" such that they impose a significant hardship. *See Sandin*, 515 U.S. at 486 (finding conditions and restrictions of inmate's disciplinary confinement were not significantly different from the conditions for the general prison population). Under this standard, there is serious question as to whether Mr. Anthony is entitled to due process protections at all. At the hearing on January 31, Mr. Anthony alleges that as a result of being in lock-down he was denied magazine and newspaper subscriptions, access to the law library, freedom to roam and do activities, and that he may otherwise have been eligible to transfer to a nicer facility. However, assuming he has alleged sufficient facts demonstrating a protected liberty interest was adversely affected, I find that he has failed to allege sufficient facts establishing a denial of due process.

### A) Sergeant Wheeler

Sergeant Wheeler was the investigating officer for the September 17 incident, and Mr. Anthony claims he failed to conduct a sufficient investigation. Mr. Anthony argues this

---

[5]Should read "unexpected manner." *Sandin*, 515 U.S. at 484.

PAGE 6 - OPINION AND ORDER

failure was done with "deliberate indifference, and contributed to the future violation of [his] right to due process."  Under the *Wolff* standard, an inmate is not entitled to an investigation performed by a third party.  Rather, the procedural guarantees anticipate the inmate will conduct his own investigation.  *See Walker*, 14 F.3d at 1420 (prior notice of disciplinary hearing is required to allow inmate to prepare for hearing, and inmate is only entitled to assistance where he is incapable of "*collect[ing]* and present[ing]" evidence in his own defense) (emphasis added).  Mr. Anthony does not allege he was unable to prepare his own defense.  Thus, it is likely that even if Sergeant Wheeler had failed to conduct any investigation, Mr. Anthony would be unable to state a due process violation.  *Id.* ("'[I]f state procedures rise above the floor set by the due process clause, a state could fail to follow its own procedures yet still provide sufficient process to survive constitutional scrutiny.' . . . [An inmate's] right to due process [is] violated only if he was not provided with process sufficient to meet the *Wolff* standard.) (quoting *Rogers v. Okin*, 738 F.2d 1, 8 (1st Cir. 1984)); *Brown v. McCormick*, 89 F.3d 844 (9th Cir. 1996) (unpublished) (holding prison's failure to follow own investigation policy was not violation of due process).   Simply because Sergeant Wheeler did not conduct his investigation in the way Mr. Anthony would have liked, does not mean Mr. Anthony's procedural due process rights under *Wolff* were violated.

      B)      <u>Hearing Officer Murray</u>

Mr. Anthony alleges Officer Murray violated his due process rights during the relevant disciplinary hearings in two ways: (1) she refused to allow him to present witnesses, and (2) her decisions finding him guilty of the disciplinary charges were wrong.

        1) Witnesses

As stated above, one of the *Wolff* requirements is that "'the inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals.'" *Walker*, 14 F.3d at 1420 (quoting *Wolff*, 418 U.S. at 566). In relation to the September hearing, Mr. Anthony claims Officer Murray refused to speak with his three requested witnesses: the judge, the D.A., and Mr. Anthony's counsel. But, as stated above, Mr. Anthony admits in his deposition that Officer Murray talked to the judge and the D.A. Thus, the only possible claim relates to Officer's Murray's failure to speak with Mr. Anthony's attorney.

In *Booth*, the Ninth Circuit recently held, "[a] prison disciplinary hearing officer's decision that an inmate's request to call witnesses may properly be denied as irrelevant, unnecessary, unduly prolonging the hearing, or jeopardizing of prison safety, is entitled to deference." 2005 WL 2449956, at *6. Here, as Mr. Anthony admits, Officer Wheeler attempted to contact his attorney, but the attorney was out of town and did not return her calls. Indeed, the hearing report indicates that she called the attorney's office and left a message on September 22, and that he had failed to return the message by September 24, the day Officer Murray issued her decision. Mr. Anthony argues she should have waited to issue her decision until the attorney returned. However, under the circumstances in this case, I find Officer Wheeler's decision to wait only two days to hear from the requested witness before issuing her decision is entitled to deference. Officer Wheeler spoke with five people of the six people present in the courtroom during the incident leading to the charges against Mr. Anthony, and without some indication Mr. Anthony's attorney would add to the record in a meaningful way, she was reasonable in deciding not to wait for his return before making her decision.

As for the October hearing, Mr. Anthony alleges he requested that all the inmates in the

PAGE 8 - OPINION AND ORDER

5C module serve as witnesses at the hearing. Officer Murray refused this request, and it does not appear that she explained her reasons for the refusal at the hearing. But, in an affidavit submitted in support of defendants' motion, Officer Murray asserts she disallowed these witnesses because (1) they were all in solitary cells with only a limited view of the event, and (2) they were unnecessary as Mr. Anthony's admissions established his guilt.

Due process is satisfied so long as the prison official "explain[s], in a limited manner, the reason why witnesses were not allowed to testify," and the reason is logically related to penalogical interests. *Ponte v. Real*, 471 U.S. 491, 497 (1985). This can be done at the hearing, or later to the court in the context of a challenge. *Id.* Officer Murray's explanation to the court satisfies this standard. It was logical for her to conclude that in light of the circumstances and Mr. Anthony's own statements that these witnesses were unnecessary. As such, I conclude there are no genuine issues of material fact regarding whether defendants denied Mr. Anthony due process by failing to allow him to present witnesses during the disciplinary hearings, and I grant defendants' motion as to these claims.

### 2) Hearing decisions

Mr. Anthony also argues Officer Murray's substantive decisions finding him guilty violate due process. A disciplinary decision satisfies due process so long as it is supported by "some evidence" that has "some indicia of reliability." *Superintendent v. Hill*, 472 U.S. 445, 455 (1985); *Toussaint v. McCarthy*, 926 F.2d 800, 802-03 (9th Cir. 1990).

#### a) September

In the September hearing, Mr. Anthony was charged with (1) failing to follow orders, (2) disruptive behavior, and (3) attempted assault. He concedes Officer Murray's decision

PAGE 9 - OPINION AND ORDER

satisfies the due process standard in relation to the first two charges; thus, his argument is that there was insufficient evidence to find him guilty of attempted assault. The only direct evidence supporting this charge is Deputy Kovachevich's incident report. Generally, this would satisfy the some-evidence-with-indicia-of-reliability standard; but, Mr. Anthony alleges the deputy falsified his report in making this allegation. Taking this allegation as true, as I must for purposes of summary judgment, suggests Officer Murray's decision was not based on some evidence with an indicia of reliability. *Hill*, 472 U.S. at 455. However, even though Deputy Kovachevich's report is the best evidence supporting the attempted assault allegation, the relevant inquiry under *Hill* is "whether there is *any* evidence in the record that could support the conclusion reached." *Id.* at 455-56 (emphasis added). In *Hill*, a prison official happened upon a commotion and discovered an inmate who appeared to have been assaulted. The official also saw three inmates fleeing. The Supreme Court ruled this was sufficient evidence for taking disciplinary action against the fleeing inmates, explaining: "due process in this context requires only that there be *some evidence* to support the findings made in the disciplinary hearing. Although the evidence in this case might be characterized as meager, and there was no direct evidence identifying any one of three inmates as the assailant, the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary." *Id.* at 457 (emphasis added).

     Here, even without the deputy's report, there is some evidence supporting Officer Murray's conclusion that Mr. Anthony attempted to assault the officers. The judge presiding in the courtroom during the incident stated: "I heard a schuffle and deputies grabbed him and left out the door. It was loud and Anthony didn't like what was happening." Feller Aff., Ex. 4. Likewise, the D.A. stated: "Anthony did say, "Get your hands off me" and jerked away from staff. He was handcuffed at waist, so couldn't hit. I did think he'd fight with them. He then

PAGE 10 - OPINION AND ORDER

says, 'ok now,' then they left." *Id.* Both witnesses corroborate that a physical scuffle occurred between the officers and Mr. Anthony. Feller Aff., Ex. 4. And with these statements, along with Mr. Anthony's admission that he physically resisted the deputies' attempt to remove him, there is *some evidence* Mr. Anthony attempted to assault the deputies. On this record, I find that Officer Murray's decision was not "without support or otherwise arbitrary."

        b) October

Mr. Anthony also argues Officer Murray's October decision finding him guilty of (1) disobeying an order, (2) disrespect to staff, and (3) disruptive behavior was wrong. Specifically, he seems to argue the officer erred because she believed Deputy McGraw's statement that he did not intentionally kick Mr. Anthony's cell door. However, this is not a determinative fact. Even accepting Mr. Anthony's version of events and concluding the deputy intentionally kicked the cell door, Mr. Anthony's admissions are sufficient to support a finding that he disobeyed an order (to be quiet), was disrespectful to staff (used aggressive, profane language towards Deputy McGraw), and engaged in disruptive behavior (use of language and arguing with Sergeant Hicks). As the hearings officer stated in her report, Mr. Anthony has a "poor reaction" and is "unable to control anger." Feller Aff., Ex. 7. Thus, I also find there are no genuine issues of material fact regarding whether Officer Murray violated Mr. Anthony's due process rights in making her decisions, and I grant defendants' motion on these claims.[6]

    C)    <u>Captain Turney</u>

---

[6]Mr. Anthony also argues Deputy McGraw and Sergeant Hicks falsified their report and tried to cover up the fact that Deputy McGraw intentionally kicked his cell. As stated, this issue is not determinative of Officer Murray's decision, and unlike the September decision, Mr. Anthony's own admissions provide some reliable evidence to support Officer Murray's decision as to all three charges.

PAGE 11 - OPINION AND ORDER

Captain Turney reviewed both of Mr. Anthony's appeals from Officer Murray's decisions finding him guilty of disciplinary violations. Mr. Anthony asserts Captain Turney's refusal "to overturn the disciplinary convictions, despite his knowledge of . . . due process violations, constituted deliberate indifference and further denied the plaintiff the due process of law in violation of the 14th Amendment." Am. Compl. at ¶ 68. Because I conclude Mr. Anthony's procedural due process rights were not violated by Officer Murray, I also conclude Captain Turney did not violate Mr. Anthony's due process rights. Defendants' motion is granted as to these claims.

## Conclusion

Mr. Anthony has failed to allege facts creating a genuine issue of material fact as to whether defendants violated his procedural due process rights. As such, defendants' motion (#48) is GRANTED, and Mr. Anthony's complaint is DISMISSED WITH PREJUDICE.

IT IS SO ORDERED.

DATED this 3rd day of February, 2006.

    /s/ Michael W. Mosman
MICHAEL W. MOSMAN
United States District Court